# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
——————————————————————x

JPMORGAN CHASE BANK, N.A.,

            Plaintiff,

- against -

BAER MARKS AND UPHAM LLP,
THE LAWYERS' FUND FOR CLIENT PROTECTION,
and JOHN DOES 1 THROUGH 25

            Defendants.
——————————————————————x

Index No. _____

INTERPLEADER
COMPLAINT

Plaintiff JPMorgan Chase Bank, N.A. ("Plaintiff" or "Chase"), by and through its attorneys, MORAN • KARAMOUZIS LLP, as and for its Interpleader Complaint alleges as follows:

## BACKGROUND

1. This interpleader action is brought pursuant to New York CPLR § 1006 and involves nine (9) bank escrow accounts that were opened at Chase by the now defunct law firm of Baer Marks & Upham LLP ("BMU") in order to deposit funds to be held in escrow for various clients of BMU. BMU ceased doing business as of December 31, 2001.

2. The representatives of BMU who appear to be responsible for the affairs of BMU have no information as to who may be entitled to the funds in these escrow accounts, and to date, no one authorized to act on behalf of BMU has applied to any Court for an Order directing payment of these escrow funds, either to the Lawyers' Fund for Client Protection, or to the proper payees or beneficiaries for whom these escrowed funds are held.

3. Because Chase is exposed to potential multiple liabilities from the rightful owner(s) of the funds on deposit in these accounts, Chase has commenced this interpleader

action, pursuant to New York CPLR §1006, seeking an Order, *inter alia*, directing Chase to pay the amounts of the deposits in these nine accounts, which total over $945,000 (Nine Hundred Forty Five Thousand Dollars), into the Court, and further to allow Chase to recover its costs, disbursements and reasonable attorneys' fees incurred in connection with this action.

## PARTIES AND JURISDICTION

4. Plaintiff Chase is a national banking association duly authorized to conduct business in the state of New York with its principal place of business located in New York, New York.

5. Upon information and belief, Defendant BMU was a law firm and New York limited liability partnership that ceased operations in or about December 31, 2001.

6. Upon information and belief, while it operated as a law firm, BMU had its principal place of business in New York, New York and BMU still currently receives mail and other communications at: Attn. Stanley Bloch, Esq., and William Norden, Esq., at the address of 620 Eighth Avenue, New York, New York 10018-1405.

7. Upon information and belief, the Lawyers' Fund for Client Protection of the State of New York (the "Lawyers' Fund") is a Fund that was established by the New York State Legislature and has its principal place of business at 119 Washington Avenue, Albany, New York 12210.

8. The New York State Rules of Professional Conduct apply to every lawyer licensed to practice in New York State and govern how escrow or trust accounts must be maintained by New York lawyers. The Rules of Professional Conduct also apply to a situation such as this where a law firm dissolves and provide that:

> Upon the dissolution of any firm of lawyers, the former partners or members shall make appropriate arrangements for the maintenance, by

2

one of them or by a successor firm, of the records specified in Rule 1.15(d).

*New York Rule of Professional Conduct 1.15 (h).*

9. Under circumstances where clients are missing or cannot otherwise be located, the Rules of Professional Conduct further provide that:

> Whenever any sum of money is payable to a client and the lawyer is unable to locate the client, *the lawyer shall apply ... to the Supreme Court* in the county in which the lawyer maintains an office for the practice of law, *for an order directing payment* to the lawyer of any fees and disbursements that are owed by the client and the balance, if any, *to the Lawyer's Fund for Client Protection for safeguarding and disbursement to persons who are entitled thereto.*

*New York Rule of Professional Conduct 1.15 (h)(emphasis supplied).*

10. Defendants John Does 1 to 25 are persons or entities who have, or may have rights to the funds on deposit in these bank accounts that are the subject of this interpleader action, but whose identities are unknown to Chase.

## FACTUAL BACKGROUND

11. Upon information and belief, the law firm of BMU ceased operations in or about December 31, 2001.

12. Upon information and belief, two former BMU partners, Stanley Bloch, Esq., ("Bloch"), and William Norden, Esq., ("Norden"), are in charge of BMU's financial affairs, including receiving BMU bank statements, collecting accounts receivable belonging to BMU and disbursing money to BMU's former partners.

13. Despite the fact that the firm has not operated in well over ten years, multiple bank escrow accounts that BMU opened at Chase remain open to this day, and monthly statements have continued to be mailed to BMU's last known address and not returned to Chase.

At no time was Chase notified that BMU ceased operations and/or that the accounts at issue should be closed.

14. This interpleader action addresses nine bank escrow accounts that were opened by BMU at Chase that contain escrowed funds for BMU's former clients that collectively total approximately $945,000.00 (Nine Hundred Forty Five Thousand Dollars).

15. Bloch and Norden have informed Chase that they do not have information that would permit them conclusively to determine which entities and/or individuals are entitled to the funds on deposit in these escrow accounts.

## The Five BMU Escrow Accounts.

16. **Account Number *****590** was opened up by BMU as an escrow account entitled "Glick Promenade" and currently has a balance of approximately $71,965.68 (Seventy One Thousand Nine Hundred Sixty Five Dollars and Sixty Eight Cents).

17. **Account Number ******582** was opened up by BMU as an escrow account entitled "Glick Manhattan Pl. 34F" and currently has a balance of $5,549.49 (Five Thousand Five Hundred Forty Nine Dollars and Forty Nine Cents).

18. **Account Number ******574** was opened up by BMU as an escrow account entitled "Glick Broadway Agreement" and currently has a balance of approximately $27,232.59 (Twenty Seven Thousand Two Hundred Thirty Two Dollars and Fifty Nine Cents).

19. Upon information and belief, these three escrow accounts (the "Glick Escrow Accounts") were opened up in connection with transactions for BMU's former client, a real estate company that contained the name Glick. Chase is unaware of the exact name or current location of this company.

4

20. **Account Number ******515** was opened up by BMU as an escrow account entitled "Eckstein Rothenberg" (the "Eckstein Rothenberg Escrow Account") and currently has a balance of approximately $15,874.89 (Fifteen Thousand Eight Hundred Seventy Four Dollars and Eighty Nine Cents). Messrs. Bloch and Norden, the former BMU partners who are currently in charge of BMU's financial affairs, have advised Chase that they did not know the identity of "Eckstein Rothenberg," as referred to in the Eckstein Rothenberg Escrow Account.

21. **Account Number ******193** was opened up by BMU as an escrow account entitled "IOLA" and currently has a balance of approximately $12,697.62 (Twelve Thousand Six Hundred Ninety Seven Dollars and Sixty Two Cents) (the "IOLA Escrow Account"). Upon information and belief, the IOLA Escrow Account was opened up in connection with different transactions for various BMU clients.

22. Bloch and Norden informed Chase that certain funds in the IOLA Escrow Account might belong to an entity named "Glick Horizon" and/or two individuals named Sami Shamoon and Joan Wanderen. However, Bloch and Norden had no further information or documentation about what amounts were owed to each, or where such clients could be located.

23. For all of these five escrow accounts: the Glick Escrow Accounts, the Eckstein Rothenberg Escrow Account and the IOLA Escrow Account (collectively referred to as the "BMU Escrow Accounts"), Bloch and Norden informed Chase that they do not know which entities and/or individuals are entitled to the funds in these five escrow accounts.

### The BMU Segregated Deposit Account

24. In addition to the five BMU Escrow Accounts, BMU maintained a "Segregated Deposit Account" at Chase bearing Account No. ******817 that was opened up in the name of Baer Marks & Upham and currently has a balance of approximately $13,185.69 (Thirteen

5

Thousand One Hundred Eighty Five Dollars and Sixty Nine Cents (the "BMU Segregated Deposit Account").

25. Upon information and belief, the funds in the BMU Segregated Deposit Account belong to unknown clients of BMU, and neither Bloch nor Norden knows which entities and/or individuals are entitled to the funds in the BMU Segregated Deposit Account.

### The Three Scott Entity Escrow Accounts

26. **Account Number *****686** was opened up by BMU as an escrow account entitled "Scott Cable, Inc." and currently has a balance of approximately $2,592.38 (Two Thousand Five Hundred Ninety Two Dollars and Thirty Eight Cents).

27. **Account Number ******558** was opened up by BMU as an escrow account entitled "Scott Management Co." and currently has a balance of approximately $681,758.60 (Six Hundred Eighty One Thousand Seven Hundred Fifty Eight Dollars and Sixty Cents).

28. **Account Number ******536 NZ4** was opened up by BMU as an escrow account entitled "Baer Marks & Upham LLP as Escrow Agents" and currently has a balance of approximately $114,808.83 (One Hundred Fourteen Thousand Eight Hundred Eight Dollars and Eighty Three Cents).

29. Upon information and belief, these three escrow accounts (the "Scott Entity Escrow Accounts") were opened up in connection with BMU's work with Scott Cable and/or Scott Management Co.

30. Messrs. Norden and Bloch also advised Chase that they would attempt to provide additional information and documentation regarding the ownership of the funds in the three Scott Entity Escrow Accounts but, to date, they have been unable to do so.

### Despite Good Faith Efforts, Chase Cannot Identify The Individuals or Corporations Who Are Entitled to the Funds in the Nine BMU Accounts

31. Over the past several months, Chase has engaged in extensive efforts in order to determine the entities and/or individuals who may be entitled to the funds in the BMU Escrow Accounts, the BMU Segregated Deposit Account and/or the Scott Entity Escrow Accounts.

32. Specifically, Chase and/or its representatives have written numerous letters to Messrs. Bloch and Norden, the attorneys in charge of BMU's financial affairs, regarding these nine accounts and met with them in person in or about May 2013.

33. Messrs. Bloch and Norden repeatedly have advised Chase that they are not aware of the identities of the entities and/or individuals who are entitled to the funds in the BMU Escrow Accounts and/or the BMU Segregated Deposit Account. Messrs. Norden and Bloch also advised Chase that they would attempt to provide additional information and documentation regarding the ownership of the funds in these accounts as well as the three Scott Entity Escrow Accounts but, to date, they have been unable to do so.

### BMU Has Not Applied For A Court Order Directing Payment Of The Funds In The BMU Escrow Accounts and/or the BMU Segregated Deposit Account To The Laywers' Fund

34. Pursuant to New York Rule of Professional Conduct 1.15(f):

> Whenever any sum of money is payable to a client and the lawyer is unable to locate the client, *the lawyer shall apply ... to the Supreme Court* in the county in which the lawyer maintains an office for the practice of law, for an order directing payment to the lawyer of any fees and disbursements that are owed by the client and the balance, if any, *to the Lawyers' Fund for Client Protection for safeguarding and disbursement to persons who are entitled thereto.*

22 NYCRR § 1200.0, Rule 1.15(f) (emphasis added).

35. Given that BMU is responsible for the nine escrow accounts but admittedly does not know the identity of the clients to whom the funds on deposit in these accounts belongs, or

7

has not provided sufficient documentary information to determine conclusively which individual(s) or entities may be entitled to the funds on deposit in these accounts, BMU has an obligation to apply to the Court for an Order directing payment of the funds in these accounts to the Lawyers' Fund for Client Protection, which is named as a Defendant in this action because of its potential entitlement to receive payment of the funds on deposit in these escrow accounts.

36. To date, despite due demand, BMU has not made an application to the Court regarding the aforementioned BMU Escrow Accounts and/or the BMU Segregated Deposit Account.

* * *

37. Based on the foregoing, Chase has commenced this interpleader action pursuant to New York CPLR § 1006 seeking an Order directing Chase to pay the amount of the deposits in the BMU Escrow Accounts, the Scott Entity Escrow Accounts, and the BMU Segregated Deposit Account into the Court, and requiring Defendants to interplead together concerning their respective claims to the funds on deposit in these accounts.

38. In addition, Chase is seeking to recover its costs, disbursements and reasonable attorneys' fees incurred in connection with the commencement of this Action in accordance with CPLR § 1006(f).

**WHEREFORE**, Plaintiff demands an Order be entered pursuant to CPLR § 1006 directing that:

(1) Each of the Defendants be restrained from instituting an action against Plaintiff JPMorgan Chase Bank, N.A. for the recovery of the amounts of the deposits in the BMU Escrow Accounts, the BMU Segregated Deposit Account and the Scott Entity Escrow Accounts;

(2) Defendants be required to interplead together concerning their respective claims to the deposits in the BMU Escrow Accounts, the Scott Entity Escrow Accounts, and the BMU Segregated Deposit Account;

(3) Plaintiff JPMorgan Chase, N.A. be directed to pay the amount of the deposits in the BMU Escrow Accounts, the Scott Entity Escrow Accounts, and the BMU Segregated Deposit Account into the Court;

(4) Plaintiff JPMorgan Chase, N.A. recover its costs, disbursements and reasonable attorneys' fees pursuant to New York CPLR § 1006(f); and

(5) For such other and further relief as may be just and proper.

Dated: Rockville Centre, New York
September 27, 2013

Respectfully submitted,

MORAN • KARAMOUZIS LLP

By: *[signature]*
SIOBHAN E. MORAN

265 Sunrise Highway, Sixth Floor
Rockville Centre, New York 11570
(516) 678-6660

Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.

9